## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

WASHINGTON WINDSOR,
Plaintiff,

v.

THE GEORGE WASHINGTON UNIVERSITY,
Defendant.

Civil Action No. 1:24-cv-02707-AHA

**FIRST AMENDED COMPLAINT FOR DECLARATORY,
INJUNCTIVE, EQUITABLE, AND MONETARY RELIEF
(Title VI of the Civil Rights Act of 1964, Section 504 of the
Rehabilitation Act of 1973, Americans with Disabilities Act, and
D.C. Common Law – Breach of Contract)**

Filed Pro Se and In Forma Pauperis

Date: March 22, 2025

# TABLE OF CONTENTS

1. Preliminary Statement

2. Jurisdiction and Venue

3. Parties

4. Factual Background

5. Count I – Disability Discrimination (ADA & Rehabilitation Act)

6. Count II – Discrimination Based on Race, Religion, and National Origin

7. Count III – Breach of Contract (D.C. Common Law)

8. Count IV – Retaliation

9. Prayer for Relief

10. Table of Authorities

11. Certificate of Service

12. Exhibit Index & Covers

## PRELIMINARY STATEMENT

Plaintiff Washington Windsor, proceeding pro se and in forma pauperis, respectfully submits this First Amended Complaint against The George Washington University ("GWU") and alleges as follows:

This action arises from a pattern of calculated, institutionally sanctioned discrimination and retaliation perpetrated by The George Washington University against Plaintiff—a decorated U.S. Army veteran, Jewish Asian-American scholar, and doctoral candidate with a service-connected disability formally recognized by the U.S. Department of Veterans Affairs. At all material times, Plaintiff maintained a record of exceptional academic distinction, intellectual engagement, and institutional contribution. His GPA exceeded 98%, his participation in high-level university events was active and documented, and his conduct remained unimpeachable.

Yet, despite Plaintiff's sterling academic record and eligibility for substantial federal educational benefits—including aid awarded under the Higher Education Act and service-connected assistance through the U.S. Department of Veterans Affairs—GWU unilaterally, and without legal or procedural justification, altered Plaintiff's approved medical leave of absence into an involuntary withdrawal. This reclassification occurred without notice, hearing, or appeal, and had the immediate effect of stripping Plaintiff of critical access to federally allocated financial aid, digital academic platforms, and

administrative resources indispensable to his continued enrollment and scholarly advancement.

Compounding this misconduct, GWU's agents engaged in retaliatory measures expressly prohibited by federal civil rights statutes. These actions included the abrupt termination of Plaintiff's institutional email account and digital identity credentials on June 20, 2024—mere days after Plaintiff received written assurances from GWU President Ellen M. Granberg that an internal investigation into discriminatory conduct would be undertaken. These retaliatory acts were executed in direct contravention of standing IT service tickets (REQ000000567414 and INC000001153020), which had been submitted to preserve Plaintiff's university access for investigatory and legal purposes.

Plaintiff brings this action pursuant to:

•    **Title VI of the Civil Rights Act of 1964** (42 U.S.C. § 2000d et seq.), which prohibits discrimination on the basis of race, color, or national origin by recipients of federal financial assistance;

•    **Section 504 of the Rehabilitation Act of 1973** (29 U.S.C. § 794), which mandates non-discriminatory access to programs for individuals with disabilities; and

- **Title II of the Americans with Disabilities Act of 1990** (42 U.S.C. § 12132), which prohibits public and quasi-public institutions from excluding qualified individuals on the basis of disability.

The U.S. Supreme Court has repeatedly affirmed that such statutory regimes confer enforceable private rights of action for individuals aggrieved by discriminatory institutional conduct. See *Alexander v. Choate*, 469 U.S. 287 (1985) (recognizing disparate impact claims under Section 504); *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998) (institutional liability under Title VI for deliberate indifference); *Cannon v. University of Chicago*, 441 U.S. 677 (1979) (recognizing an implied right of action under Title VI in educational settings).

The facts underlying Plaintiff's claims are not speculative. They are chronologically documented, supported by internal university records, email correspondence, financial aid documentation, and VA adjudications, all of which will be appended to this Complaint as numbered exhibits. Plaintiff seeks declaratory, injunctive, equitable, and compensatory relief for the systemic, retaliatory, and unlawful treatment he endured at the hands of GWU administrators acting under the aegis of federal funding and academic authority.

## JURISDICTION AND VENUE

This Court possesses original subject matter jurisdiction pursuant to **28 U.S.C. § 1331**, as the claims asserted herein arise under the Constitution and laws of the United States, including but not limited to:

• **Title VI of the Civil Rights Act of 1964**, 42 U.S.C. §§ 2000d et seq., which prohibits race, color, and national origin discrimination by recipients of federal financial assistance;

• **Section 504 of the Rehabilitation Act of 1973**, 29 U.S.C. § 794, which mandates nondiscriminatory access to federally funded programs and services for individuals with disabilities;

• **Title II of the Americans with Disabilities Act**, 42 U.S.C. § 12132, which proscribes discriminatory exclusion by public entities of qualified individuals with disabilities;

• **42 U.S.C. § 12203**, which prohibits retaliation against individuals for opposing practices made unlawful under the ADA.

Federal jurisdiction is further conferred under **28 U.S.C. § 1343(a)(3) and § 1343(a)(4)**, as Plaintiff seeks redress for the deprivation of rights, privileges, and immunities secured by the Constitution and federal statutes, and seeks equitable and monetary relief under Acts of Congress designed to protect civil rights.

This Court also possesses pendant jurisdiction over related **common law breach of contract claims** under the judicial doctrine of supplemental jurisdiction, codified at **28 U.S.C. § 1367**, given that such claims arise from a common nucleus of operative fact.

Venue is proper in this judicial district under **28 U.S.C. § 1391(b)(1)** and **§ 1391(b)(2)**, as the Defendant maintains its principal place of business within the District of Columbia, and because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred within this District. These include, inter alia, the unauthorized alteration of Plaintiff's academic status, the termination of his financial aid eligibility, the deactivation of his institutional accounts, the denial of requested accommodations, and the execution of retaliatory administrative actions—each orchestrated by personnel operating under GWU's centralized authority in Washington, D.C.

Accordingly, jurisdiction and venue are proper in this Court.

## PARTIES

**Plaintiff, Washington Windsor**, is a Jewish, Asian American male and a decorated **United States Army veteran** whose service-connected disability has been

formally adjudicated and recognized by the **U.S. Department of Veterans Affairs** (VA).
Plaintiff is a **qualified individual** with a disability as that term is defined under both **42
U.S.C. § 12131(2)** and **29 U.S.C. § 705(20)(B)**. At all relevant times, Plaintiff was
enrolled as a **doctoral candidate in good academic standing** at The George Washington
University, with a demonstrated record of academic excellence—maintaining a
cumulative GPA exceeding 98%—as well as documented participation in university-
sponsored conferences, civic programming, and scholarly initiatives, including events
convened by GWU's Office of Diversity, Equity, and Community Engagement and the
Aspen Institute.

Plaintiff was awarded **$20,500 in federally sourced financial aid**, formally
confirmed via written communications from GWU's Executive Director of Financial
Assistance. That aid, together with Plaintiff's eligibility for additional benefits under
**Chapter 33 of the Post-9/11 G.I. Bil**l, constitutes federal financial assistance to which
Plaintiff was legally entitled.

As a racial and religious minority, a person with a disability, and a veteran,
Plaintiff is a member of multiple classes expressly protected by **Title VI of the Civil
Rights Act of 1964**, the **Americans with Disabilities Act (ADA)**, and **Section 504 of
the Rehabilitation Act of 1973.** Plaintiff's academic and civil rights under these statutes
were violated by Defendant's discriminatory and retaliatory conduct, as further set forth
herein.

**Defendant, The George Washington University ("GWU")**, is a private, nonsectarian academic institution organized under the laws of the **District of Columbia**, with its principal place of business located at **1918 F Street NW, Washington, D.C. 20052.** GWU is a recipient of substantial federal financial assistance, including but not limited to: (a) student financial aid disbursed through the **U.S. Department of Education under Title IV of the Higher Education Act**, (b) **federal research grants**, and (c) **veterans' educational benefits administered by the U.S. Department of Veterans Affairs.** GWU thereby qualifies as a covered entity subject to the anti-discrimination mandates of **Title VI, Section 504,** and the **ADA**.

At all material times, GWU acted through its agents, faculty, staff, and administrative officers, each of whom acted within the scope of their employment and with institutional authority. These actors include—but are not limited to—program directors, financial aid officers, academic services staff, and executive administrators who either directly engaged in, or failed to intervene in, discriminatory conduct after receiving actual notice.

## FACTUAL BACKGROUND

Plaintiff Washington Windsor is a doctoral student, a decorated U.S. Army veteran, and a recipient of a **service-connected** disability rating officially recognized by the **U.S. Department of Veterans Affairs (VA)**. He was duly admitted to The George

Washington University ("GWU") as a doctoral candidate in the School of Engineering and Applied Science (SEAS), and at all relevant times maintained excellent academic standing, as evidenced by a cumulative grade point average in excess of 98%, recorded through GWU's official Blackboard academic portal. Plaintiff's coursework performance included perfect and near-perfect scores across multiple graduate-level modules. His academic file reflects no disciplinary infractions or academic deficiencies.

In **January 2024**, Plaintiff experienced a medically significant traffic accident that exacerbated his preexisting, service-connected condition. In compliance with GWU's published policy on graduate medical leave, Plaintiff submitted formal documentation, including a letter from a licensed medical professional and a VA disability benefits letter, requesting a temporary leave of absence. This documentation was submitted through official university channels and acknowledged by administrative personnel. The request was granted in **February 2024**, and Plaintiff was expressly advised that his academic standing would remain intact and that his **federally awarded financial aid, totaling $20,500**, would be **preserved and deferred** to the **Fall 2024 semester.** These representations were confirmed by GWU's Executive Director of Student Financial Assistance, **Michelle Arcieri (Exhibit 1)**, on multiple dates including May 24 and May 29, 2024.

Concurrently, Plaintiff remained an active participant in the university community. Notwithstanding his medical leave, he was invited to and attended official institutional events, including the **GWU Diversity Summit (Exhibit 2)**, a high-profile

presidential convening hosted by **President Ellen M. Granberg**, as well as a public forum co-sponsored with the **Aspen Institute (Exhibit 3)**. At no point did Plaintiff's credentials or university access indicate that he had been withdrawn or disaffiliated from GWU. To the contrary, Plaintiff's **doctoral student credentials remained valid**, and his email access was intact until mid-June.

On **May 30, 2024**, without prior notice, opportunity to be heard, or any process resembling procedural due process, Plaintiff's academic status was **unilaterally altered** from "approved medical leave" to "withdrawn." This reclassification was not initiated by the Office of Disability Support Services or Financial Aid, but by **senior program leadership**, including a faculty director within SEAS, acting without consultation, documentation, or engagement with Plaintiff. The decision functionally **severed Plaintiff's enrollment**, nullified his **access to financial aid**, blocked his student portal access, and disrupted his academic progress—despite the fact that Plaintiff remained academically eligible and had complied with all procedural prerequisites for medical leave.

On or around **June 2, 2024**, Plaintiff contacted **Amy Clark**, a senior administrator, via email, reiterating his disability status, reaffirming his eligibility for reinstatement, and requesting immediate rectification. His message was met with silence. No acknowledgment was provided, and no administrative process was initiated. This silence reflects either **willful indifference or deliberate obstruction** of Plaintiff's federally protected rights.

On **June 14, 2024,** *President Granberg issued a written response acknowledging receipt of Plaintiff's formal complaint* and *promising an institutional review* (**Exhibit 4).** However, within **six days**—on **June 20, 2024**—GWU **abruptly terminated Plaintiff's university email account**, even though two internal IT service tickets (**REQ000000567414 and INC000001153020**) were pending (**Exhibit 5**), both of which explicitly sought to **preserve Plaintiff's access during the pendency of the investigation.** The deactivation not only severed Plaintiff's ability to communicate with faculty, administrators, and legal counsel, but also obstructed access to **potentially exculpatory evidence**, and impeded his engagement with **federal oversight authorities.**

Plaintiff's exclusion was exacerbated by the university's **failure to assign him an academic advisor**—a foundational component of doctoral education and a standard institutional practice at GWU. This omission left Plaintiff without procedural guidance, academic advocacy, or internal recourse. No explanation was ever provided as to why Plaintiff, unlike his non-disabled or non-minority peers, was denied this essential form of mentorship.

The sequence of events, marked by **temporal proximity to Plaintiff's protected complaints**, the **abandonment of established procedural safeguards**, and the **targeted erosion of Plaintiff's institutional identity and access**, reflects not administrative oversight but a **pattern of intentional exclusion, systemic neglect, and retaliatory animus**. These facts give rise to plausible and justiciable claims under the Americans

with Disabilities Act, Section 504 of the Rehabilitation Act, Title VI of the Civil Rights

Act, and District of Columbia contract law.

## COUNT I – DISABILITY DISCRIMINATION

**Americans with Disabilities Act (42 U.S.C. § 12101 et seq.) and Section 504 of
the Rehabilitation Act of 1973 (29 U.S.C. § 794)**

Plaintiff hereby realleges and incorporates by reference all preceding paragraphs,

including the Factual Background, as though fully set forth herein.

Plaintiff is a "qualified individual with a disability" within the meaning of **42
U.S.C. § 12131(2) and 29 U.S.C. § 705(20)(B).** His service-connected medical

condition, recognized through formal adjudication by the **U.S. Department of Veterans
Affairs**, substantially limits one or more major life activities. Despite this, Plaintiff

remained fully capable of meeting the essential requirements of his doctoral program, as

evidenced by his high academic standing and the university's prior approval of his

medical leave request.

Defendant GWU, as a private institution receiving substantial federal financial

assistance, is subject to the nondiscrimination mandates of both the **Americans with
Disabilities Act (ADA)** and **Section 504 of the Rehabilitation Act.** See *Pa. Dep't of
Corr. v. Yeskey*, 524 U.S. 206, 210 (1998); *Alexander v. Choate*, 469 U.S. 287, 295–97

(1985). These statutes prohibit both intentional discrimination and the maintenance of policies or practices that have the effect of excluding individuals with disabilities from educational programs, services, or benefits.

Here, Defendant's conduct constituted both de jure and de facto disability-based exclusion. In **January 2024**, Plaintiff submitted a formal request for a medical leave of absence, supported by documentation of his VA-adjudicated disability and a professional letter from a treating physician requesting academic accommodation. The request was approved in **February 2024**, consistent with GWU's published medical leave policy. Plaintiff was expressly informed that his student status would remain active and that his **federal financial aid award of $20,500** would be deferred to the **Fall 2024 semester** (**Exhibit 6**).

Despite these assurances, on **May 30, 2024,** Plaintiff was **unilaterally and without justification reclassified as "withdrawn."** This change occurred without any prior notice, hearing, or opportunity to contest the action—procedural safeguards typically afforded to similarly situated non-disabled students. This reclassification not only extinguished Plaintiff's financial aid eligibility but severed his institutional identity and interrupted his doctoral trajectory.

On **June 2, 2024**, Plaintiff emailed **Amy Clark**, a senior university administrator, requesting reinstatement and reasserting his disability status. The email was never answered. The deliberate disregard of Plaintiff's outreach—combined with the failure to

offer any interactive process or individualized assessment—demonstrates a willful refusal

to engage in the reasonable accommodation process mandated by federal law. See *Duvall*

*v. Cnty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001) (failure to engage in interactive

process constitutes actionable discrimination); *Bennett-Nelson v. Louisiana Bd. of*

*Regents*, 431 F.3d 448, 455 (5th Cir. 2005).


Moreover, the **deactivation of Plaintiff's university email and access**

**credentials on June 20, 2024**—despite pending IT tickets (REQ000000567414,

INC000001153020) seeking preservation of access—had the practical effect of

eliminating his ability to (a) communicate with university officials, (b) preserve

evidentiary records, (c) pursue internal remedies, and (d) engage with external civil rights

authorities. The discriminatory impact of this administrative action was immediate,

punitive, and executed in knowing disregard of Plaintiff's protected status.


**Other students**—notably those without disabilities—have been granted **six-**

**month leaves** for medical, personal, or academic emergencies without losing their

enrollment, access, or aid. The disparate treatment Plaintiff received in comparison to

those non-disabled students under similar circumstances gives rise to a strong inference

of discriminatory animus.


The combination of:


• Defendant's refusal to provide a reasonable accommodation,

- The abrupt and unnotified change in academic status,

- The targeted severance of digital access, and

- The failure to assign Plaintiff an academic advisor—

collectively amount to a **pattern of deliberate indifference** in violation of the ADA and Section 504.

As a direct and proximate result of Defendant's conduct, Plaintiff has suffered:

- Economic harm in the form of forfeited financial aid and disrupted academic progression;

- Non-economic harm including reputational damage, emotional distress, and humiliation;

- And intangible harms tied to the stigmatic injury of exclusion on the basis of disability.

Accordingly, Plaintiff seeks declaratory relief, injunctive relief (including reinstatement of status and access), and compensatory damages as authorized by **29 U.S.C. § 794a(a)(2) and 42 U.S.C. § 12133.**

## COUNT II – DISCRIMINATION BASED ON RACE, RELIGION, AND NATIONAL ORIGIN

**Title VI of the Civil Rights Act of 1964**

**(42 U.S.C. § 2000d et seq.)**

Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

Title VI of the Civil Rights Act of 1964 provides, in unequivocal terms, that:

"*No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.*" **42 U.S.C. § 2000d.**

This statutory guarantee is enforceable through an implied private right of action. See Cannon v. Univ. of Chicago, 441 U.S. 677, 703 (1979). To establish a prima facie case of discrimination under Title VI, a plaintiff must plausibly allege that: (1) he is a member of a protected class; (2) he suffered adverse educational treatment; and (3) the treatment occurred under circumstances giving rise to an inference of discriminatory intent. *See Commodari v. Long Island Univ*., 89 F. Supp. 2d 353, 378 (E.D.N.Y. 2000).

Plaintiff satisfies all three elements. He is a Jewish War Veteran (JWV member ID: WIND6110 (**Exhibit 7**)), **Asian American doctoral student** and a **U.S. Army veteran**—a member of multiple historically marginalized communities. He was placed on approved medical leave for the Spring 2024 semester, during which his enrollment

and financial aid eligibility were to be preserved, as confirmed in writing. Nevertheless, following Plaintiff's internal complaints to university leadership alleging discriminatory treatment—including racial, religious, and disability-based bias—GWU administrators **abruptly and without warning reclassified his status as "withdrawn" on May 30, 2024.**

This adverse administrative action, which nullified his financial aid and terminated his academic progress, was taken without any opportunity for notice, hearing, or internal review—procedural safeguards customarily afforded to similarly situated students not belonging to Plaintiff's protected classes. The context and timing strongly support a finding of discriminatory animus.

Indeed, the racial and religious bias was made explicit. On **May 30, 2024,** during a phone call with a GWU financial aid officer, Plaintiff was asked,

*"Are you even eligible for this aid as an international or Asian student?"*

The implication was unmistakable: Plaintiff's ***national origin or perceived foreignness*** disqualified him from federal benefits that he, as a U.S. citizen and veteran, was lawfully entitled to receive. This statement constituted not only a **mischaracterization of Plaintiff's legal status**, but also a direct invocation of racial and ethnic bias that cuts against the core of Title VI's protective scope.

Further, on **June 14, 2024**, when Plaintiff inquired about the reclassification of his status and its discriminatory implications, a university official responded dismissively:

*"Don't play the minority or veteran card."*

This remark, made in direct response to Plaintiff's invocation of civil rights protections, evinces overt **racialized disdain, hostility toward Plaintiff's ethnic and veteran identity, and a dismissal of his rights as a protected class member.**

The discriminatory conduct did not end with rhetoric. Within **six days** of Plaintiff receiving a written acknowledgment from **President Ellen M. Granberg** that an investigation would be initiated into his civil rights concerns, GWU **terminated Plaintiff's email access and deactivated his digital identity credentials** (June 20, 2024), despite the presence of active IT preservation tickets (REQ000000567414 and INC000001153020). This act, carried out in temporal proximity to Plaintiff's complaints, **obstructed Plaintiff's ability to preserve evidence, communicate with oversight bodies**, and **engage in protected activity.**

In addition, Plaintiff was never assigned an academic advisor during his doctoral program—a glaring procedural aberration that deviates from GWU's standard graduate education protocol. This deprivation denied Plaintiff access to institutional mentorship, internal advocacy, and channels for escalation. Non-minority students and students

outside Plaintiff's protected classes were routinely assigned advisors within weeks of matriculation. Plaintiff, by contrast, was systematically **isolated** and **excluded** from structural supports.

Taken together, these actions—when viewed in light of the direct discriminatory statements, the stark procedural disparities, and the retaliatory conduct that followed Plaintiff's civil rights complaints—form a **plausible and well-supported inference of intentional discrimination** under the framework articulated in *Zeno v. Pine Plains Cent. Sch. Dist., 702 F.3d 655 (2d Cir. 2012), and Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998).

As a direct and proximate result of Defendant's unlawful and discriminatory acts, Plaintiff has suffered:

- • Loss of access to federally funded education;

- • Deprivation of $20,500 in federal financial aid;

- • Reputational harm within the academic and professional communities;

- • Emotional distress and psychological injury stemming from exclusion based on race and religion;

- • And the denial of equal educational opportunity.

Accordingly, Plaintiff seeks **declaratory relief, compensatory damages, and injunctive remedies** to redress the violations of Title VI, protect similarly situated

students from future harm, and uphold the foundational anti-discrimination principles enshrined in federal law.

## COUNT III – BREACH OF CONTRACT

### (District of Columbia Common Law)

Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

Under the settled jurisprudence of the **District of Columbia**, the relationship between a private university and its enrolled students gives rise to an implied or express contractual relationship, the contours of which are defined by **published policies, enrollment agreements, institutional correspondence, handbooks, financial aid awards**, and other documents that collectively manifest mutual assent. See *Greene v. Howard Univ., 412 F.2d 1128, 1131 (D.C. Cir. 1969); Allworth v. Howard Univ.,* 890 A.2d 194, 202 (D.C. 2006).

To state a claim for breach of contract, a plaintiff must allege: (1) the existence of a valid and enforceable contract; (2) an obligation or duty arising thereunder; (3) a

material breach of that obligation by the defendant; and (4) resulting damages. *Peyton v. Reid*, 400 A.2d 104, 107 (D.C. 1979).

Here, Plaintiff and Defendant entered into a valid and binding contractual relationship upon Plaintiff's matriculation into GWU's doctoral program. The material terms of that contract were defined, inter alia, by the following instruments:

- **GWU's 2023–2024 Doctoral Student Handbook**, which explicitly provides that students in good standing may request a **one-semester medical leave** while retaining **active student status**, **institutional access, and financial aid eligibility**;

- **The Doctoral_SEAS8510-SPRING-2 2024_Etemadi file** (**Exhibit 8**), issued by Plaintiff's program director, which stated that withdrawals or leave requests made after the **second class session** would not result in academic or financial penalty, provided proper documentation was submitted;

- Written confirmation of Plaintiff's medical leave approval issued in February 2024, based on documentation that included a VA disability benefits letter and a physician's statement recommending accommodation;

- Official communications from **Michelle Arcieri**, GWU's Executive Director of Student Financial Assistance, dated **May 24 and May 29, 2024**, explicitly affirming Plaintiff's continued eligibility for **$20,500 in federal financial aid** for the Fall 2024 semester (Exhibit 1);

- And a **Chapter 31 confirmation letter (Exhibit 9)** from "**APRIL CLARK**" of the GWU Military and Veteran Services Office, dated January 16, 2024, confirming the alignment of VA educational benefits with the approved aid package.

Each of these instruments, independently and collectively, gave rise to contractual duties—duties that GWU failed to honor.

On **May 30, 2024**, without prior notice, explanation, hearing, or opportunity to respond, Defendant **unilaterally altered Plaintiff's status from "approved medical leave" to "withdrawn."** This action had immediate and irreversible consequences: it **revoked Plaintiff's access to financial aid,** erased his enrollment record for the semester, disabled his university identity credentials, and extinguished his ability to resume doctoral coursework.

This administrative act constituted a ***material breach*** of the express and implied terms of the contract. It contravened GWU's own policies and violated Plaintiff's reasonable expectations based on the university's repeated written assurances.

Moreover, GWU's **persistent failure to assign Plaintiff an academic advisor,** despite this being a standard feature of graduate education and a core element of the doctoral experience, represents a further breach of the **implied covenant of good faith and fair dealing**, which inheres in every contract under District of Columbia law. *See Morris v. Wash. Metro. Area Transit Auth., 781 F.2d 218, 221* (D.C. Cir. 1986). The absence of an advisor deprived Plaintiff of academic mentorship, internal advocacy, and access to critical administrative resources—factors that exacerbated the harm caused by the wrongful withdrawal.

Defendant's acts and omissions were not trivial technicalities but **fundamental breaches** that undermined the very core of Plaintiff's educational agreement. As a direct and foreseeable result of Defendant's misconduct, Plaintiff suffered:

• **Economic damages**, including the forfeiture of $20,500 in federally guaranteed aid and costs related to interrupted academic progression;

• **Reputational harm**, resulting from an erroneous "withdrawn" designation on his academic record;

• **Severe emotional distress**, triggered by abrupt exclusion, lack of institutional recourse, and the compounding stigma associated with being cast out of a doctoral program without cause;

• And a **loss of future earning capacity**, owing to the unjust disruption of Plaintiff's trajectory toward an academic and public service career.

Accordingly, Plaintiff seeks **compensatory damages, reinstatement of his doctoral student status, restoration of his financial aid eligibility,** and a **judicial declaration** that Defendant materially breached its contractual obligations, in both letter and spirit, under the applicable laws of the District of Columbia.

## COUNT IV – RETALIATION

**(Title VI – 42 U.S.C. § 2000d; Section 504 of the Rehabilitation Act – 29 U.S.C. § 794; Americans with Disabilities Act – 42 U.S.C. § 12203)**

Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

Federal civil rights statutes, including **Title VI, Section 504**, and the **Americans with Disabilities Act,** prohibit not only direct discrimination but also **retaliatory conduct** taken against individuals who engage in protected activity—such as filing complaints, opposing discriminatory practices, or participating in investigative proceedings. See Jackson v. Birmingham *Bd. of Educ., 544 U.S. 167, 173–74 (2005); Weixel v. Bd. of Educ. of the City of N.Y., 287 F.3d 138, 149 (2d Cir. 2002); CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 452 (2008).

The anti-retaliation provisions are sweeping in their protective reach, recognizing that retaliation, even more than initial discrimination, undermines institutional accountability and chills the exercise of statutory rights. See Robinson v. Shell Oil Co., 519 U.S. 337, 346 (1997) ("The language of the retaliation provision is broad and inclusive.").

Plaintiff, as a disabled, Asian American, Jewish veteran, repeatedly engaged in protected activity throughout the Spring and Summer of 2024 by reporting **institutional discrimination** on the basis of race, religion, and disability to senior GWU officials—

including the **Office of the President.** His communications challenged university administrators' deviation from established policy and highlighted disparities in treatment that disadvantaged members of protected classes.

Rather than investigate these claims in good faith, Defendant undertook a campaign of **administrative retaliation** that escalated in both precision and severity.

Specifically:

- On **May 30, 2024**, within days of Plaintiff's protected communications to academic administrators and financial aid officials, Plaintiff was **reclassified from "medical leave" to "withdrawn"**—a status change executed **without prior notice, hearing, justification, or opportunity to appeal**. This action severed Plaintiff's access to $20,500 in federally awarded aid and disrupted his academic trajectory.

- On **June 14, 2024**, Plaintiff received a formal email from **President Ellen M. Granberg** confirming that Plaintiff's discrimination complaint would **be investigated (Exhibit 10)**. However, a mere **six days later**, on **June 20, 2024**, Defendant **terminated Plaintiff's university email account** and revoked his digital access credentials—despite two active internal IT service tickets (REQ000000567414 and INC000001153020) explicitly requesting preservation of access during the investigation.

- GWU's refusal to reverse the deactivation—despite Plaintiff's repeated notices and the existence of an open investigation—constitutes not an oversight, but a **deliberate institutional maneuver to sever Plaintiff's lifeline to internal records,**

**faculty communications, and evidentiary material**, all while cloaking the university's retaliatory conduct in administrative opacity.

•      These adverse actions were compounded by Defendant's **refusal to assign Plaintiff an academic advisor**, an omission that systematically denied him access to procedural guidance and academic representation. While Plaintiff's peers enjoyed regular institutional support, Plaintiff—uniquely situated as a member of multiple protected classes—was structurally disenfranchised.

The retaliatory nature of Defendant's conduct is further substantiated by the **temporal proximity** between Plaintiff's protected activity and Defendant's punitive responses. See *Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268, 273 (2001) (temporal proximity gives rise to inference of retaliation); *Kachmar v. SunGard Data Sys., Inc.,* 109 F.3d 173, 177 (3d Cir. 1997) (retaliation may be inferred from "a pattern of antagonism").

Moreover, Plaintiff was subjected to discriminatory remarks that underscore institutional animus:

*On May 30, 2024, a financial aid officer asked Plaintiff, "Are you even eligible for this aid as an international or Asian student?"*

*On June 14, 2024, after objecting to his reclassification, Plaintiff was told by a GWU administrator, "Don't play the minority or veteran card."*

These statements are probative not only of **underlying bias**, but of the
**retaliatory mindset** with which Plaintiff's civil rights complaints were met. Courts have
repeatedly held that retaliatory conduct may be proven by direct or circumstantial
evidence, including discriminatory remarks and departure from normal procedures. See
*Zelaya v. UNICCO Serv. Co.*, 587 F. Supp. 2d 277, 285 (D.D.C. 2008).

GWU's campaign of retaliation—executed with administrative precision and in
knowing contravention of Plaintiff's statutory rights—inflicted real and measurable harm.
Plaintiff lost access to his education, forfeited financial aid guaranteed by federal statute,
suffered reputational damage within the academic and professional communities, and
endured profound emotional distress. These harms are **neither speculative nor
attenuated**; they are the direct, foreseeable result of Defendant's reprisal.

Accordingly, Plaintiff seeks:

•  A **declaratory judgment** that Defendant's actions constituted unlawful
retaliation under Title VI, Section 504, and the ADA;

•  **Compensatory damages** for economic loss, reputational injury, and
emotional distress;

•  **Injunctive relief**, including reinstatement of academic status, restoration
of digital access, and a mandate that Defendant cease all retaliatory practices against
Plaintiff and other similarly situated students;

- And **any further relief** this Court deems necessary to vindicate the public interest in preserving the integrity of civil rights protections within institutions of higher learning.

## PRAYER FOR RELIEF

WHEREFORE, in light of the foregoing, and in recognition of the systematic, retaliatory, and unlawful conduct perpetrated by The George Washington University—conduct which violated bedrock civil rights statutes, breached enforceable contractual obligations, and undermined the sanctity of academic freedom—**Plaintiff Washington Windsor**, respectfully requests that this Honorable Court enter judgment in his favor and grant the following relief in full:

### 1. Declaratory Relief

A judicial declaration, under **28 U.S.C. §§ 2201–2202,** that Defendant's conduct violated Plaintiff's rights under:

a) **Title VI of the Civil Rights Act of 1964** (42 U.S.C. § 2000d), by subjecting Plaintiff to intentional discrimination on the basis of race, national origin, and religion;

b) **Section 504 of the Rehabilitation Act of 1973** (29 U.S.C. § 794), by excluding
Plaintiff from participation in, denying the benefits of, and subjecting him to
discrimination in federally funded education programs on the basis of disability;

c) **Title II of the Americans with Disabilities Act** (42 U.S.C. § 12132), by failing to
provide reasonable accommodations and retaliating against Plaintiff for asserting
protected rights; and

d) **District of Columbia contract law**, by materially breaching its express and implied
agreements with Plaintiff, including the covenant of good faith and fair dealing.

## 2. Injunctive Relief

An order directing The George Washington University to:

a) **Reinstate Plaintiff's enrollment** in its doctoral program nunc pro tunc, restoring his
academic status as if the wrongful withdrawal had never occurred;

b) **Restore Plaintiff's university identity credentials and institutional access,**
including email, digital portals, academic records, library privileges, and course
registration systems;

c) **Reassign a qualified academic advisor** within Plaintiff's doctoral program, consistent with GWU's standard practices for similarly situated students;

d) **Reprocess, reauthorize, and reallocate Plaintiff's federally awarded financial aid** in the amount of $20,500 for the Fall 2024 semester, as originally promised and confirmed in writing;

e) **Expunge all adverse notations** related to Plaintiff's "withdrawn" status from institutional records, and issue a written corrective statement to all relevant institutional departments and oversight agencies;

f) **Cease and desist from all current or future acts of retaliation,** direct or indirect, against Plaintiff and issue institutional guidance reaffirming its obligations under federal civil rights laws.

### 3. Compensatory Damages

An award of compensatory damages in an amount to be determined at trial, including but not limited to:

a) **Economic losses**, including the forfeiture of financial aid, delayed degree completion, and future lost earning capacity directly traceable to Defendant's unlawful actions;

b) **Non-economic harms**, including pain and suffering, humiliation, emotional distress, and reputational injury resulting from exclusion, retaliation, and discriminatory treatment;

c) **Consequential damages,** including costs associated with loss of academic access, legal fees incurred in pursuit of reinstatement, and out-of-pocket expenses caused by Defendant's breach.

### 4. Equitable Relief

Such further **equitable and injunctive relief** as the Court deems just and proper to redress past injuries and to preempt future violations of Plaintiff's federally and contractually protected rights.

### 5. Costs and Attorneys' Fees

Pursuant to:

- **29 U.S.C. § 794a(b)** (Rehabilitation Act);
- **42 U.S.C. § 12205** (ADA); and
- **42 U.S.C. § 1988(b)** (Title VI incorporated via 42 U.S.C. § 2000d-7),

Plaintiff seeks an award of reasonable **attorneys' fees, expert witness costs,** and **litigation expenses**. While Plaintiff proceeds **pro se** at present, should legal

representation be secured during the course of proceedings, full fees and costs should be awarded retroactively and prospectively.

### 6. Any Further Relief

Granting such other, additional, or alternative relief—at law or in equity—as this Court deems just, proper, and necessary to:

- Remedy the institutional injury sustained by Plaintiff;

- Vindicate the rule of law; and

- Safeguard the civil rights of all similarly situated students within institutions receiving federal funds.

Respectfully submitted,

March 22, 2025

/s/ Washington Windsor

Washington Windsor

530 E. McDowell Rd., Unit 107-206

Phoenix, AZ 85004

Email: ICC@sandraoconnerlawschool.education

Phone: (202) 701-5504

# TABLE OF AUTHORITIES

**United States Supreme Court Cases**

- Alexander v. Choate, 469 U.S. 287 (1985) – pp. 5, 14

- Bennett-Nelson v. Louisiana Bd. of Regents, 431 F.3d 448 (5th Cir. 2005) – p. 15

- Cannon v. University of Chicago, 441 U.S. 677 (1979) – pp. 5, 17

- CBOCS West, Inc. v. Humphries, 553 U.S. 442 (2008) – p. 25

- Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268 (2001) – pp. 27, 34

- Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274 (1998) – pp. 5, 20

- Jackson v. Birmingham Bd. of Educ., 544 U.S. 167 (2005) – p. 25

- Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206 (1998) – p. 14

- Robinson v. Shell Oil Co., 519 U.S. 337 (1997) – p. 25

**United States Courts of Appeals Cases**

- Duvall v. Cnty. of Kitsap, 260 F.3d 1124 (9th Cir. 2001) – p. 15

- Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173 (3d Cir. 1997) – p. 27

- Weixel v. Bd. of Educ. of the City of N.Y., 287 F.3d 138 (2d Cir. 2002) – p. 25

- Zeno v. Pine Plains Cent. Sch. Dist., 702 F.3d 655 (2d Cir. 2012) – pp. 20, 27

**United States District Court Cases**

- Mawhinney v. Univ. of the Dist. of Columbia, 711 F. Supp. 2d 1 (D.D.C. 2010) – p. 22

- Zelaya v. UNICCO Serv. Co., 587 F. Supp. 2d 277 (D.D.C. 2008) – p. 28

- Commodari v. Long Island Univ., 89 F. Supp. 2d 353 (E.D.N.Y. 2000) – pp. 17, 35

**District of Columbia Appellate Cases**

- Greene v. Howard Univ., 412 F.2d 1128 (D.C. Cir. 1969) – p. 22

- Allworth v. Howard Univ., 890 A.2d 194 (D.C. 2006) – p. 22

- Morris v. Wash. Metro. Area Transit Auth., 781 F.2d 218 (D.C. Cir. 1986) – p. 23

- Peyton v. Reid, 400 A.2d 104 (D.C. 1979) – p. 22

Statutes and Regulations

- Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. – pp. 1, 5, 13, 25, 32

- 42 U.S.C. § 12131 – pp. 8, 13

- 42 U.S.C. § 12132 – pp. 1, 6, 29

- 42 U.S.C. § 12203 – pp. 6, 25

- Civil Rights Act of 1964, Title VI, 42 U.S.C. § 2000d et seq. – pp. 1, 5, 6, 16, 25, 32

- 42 U.S.C. § 2000d – pp. 6, 17

- 42 U.S.C. § 2000d–7 – p. 6

- Rehabilitation Act of 1973, Section 504, 29 U.S.C. § 794 – pp. 1, 5, 13, 25

- 29 U.S.C. § 705(20)(B) – pp. 8, 13

- 29 U.S.C. § 794a – pp. 16, 30

- Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202 – p. 29

- 28 U.S.C. § 1331 – p. 6

- 28 U.S.C. § 1343(a)(3), (4) – p. 6

- 28 U.S.C. § 1391(b)(1), (2) – p. 7

- 34 C.F.R. § 100.7(e) – p. 37

- 28 C.F.R. § 42.503(b)(1)(vii) – p. 37

- 42 U.S.C. § 1988(b) – p. 32

- 42 U.S.C. § 12205 – p. 32

- 29 U.S.C. § 794a(b) – p. 32

## CERTIFICATE OF SERVICE

I hereby certify that on March 22, 2025, I electronically filed the foregoing **First Amended Complaint for Declaratory, Injunctive, Equitable, and Monetary Relief** with the Clerk of the Court using the CM/ECF system. Pursuant to Local Civil Rule 5.4(d), service will be effected automatically via CM/ECF upon all counsel of record for Defendant The George Washington University, including:

Served via CM/ECF:

• Daniel I. Prywes (D.C. Bar No. 342394)

Morris, Manning & Martin, LLP

1333 New Hampshire Avenue, NW, Suite 800

Washington, DC 20036

Email: dprywes@mmmlaw.com

• Jessica A. Rodriguez (D.C. Bar No. 1024134)

Morris, Manning & Martin, LLP

1333 New Hampshire Avenue, NW, Suite 800

Washington, DC 20036

Email: jrodriguez@mmmlaw.com

• Rebecca K. Connolly (D.C. Bar No. 1742372)

Morris, Manning & Martin, LLP

1333 New Hampshire Avenue, NW, Suite 800

Washington, DC 20036

Email: rconnolly@mmmlaw.com

Dated: March 22, 2025

Respectfully submitted,


/s/ Washington Windsor

Washington Windsor

530 E. McDowell Rd., Unit 107-206

Phoenix, AZ 85004

Email: ICC@sandraoconnerlawschool.education

Phone: (202) 701-5504

Pro Se Plaintiff

## EXHIBIT INDEX & COVERS

| Exhibit No. | Description |
| --- | --- |
| 1 | Emails from Michelle Arcieri confirming $20,500 federal aid eligibility |
| 2 | Diversity Summit attendance documentation |
| 3 | GWU-Aspen Institute forum participation materials |
| 4 | Response from President Ellen M. Granberg (June 14, 2024) |
| 5 | IT Service Tickets REQ000000567414 and INC000001153020 |
| 6 | Confirmation that $20,500 federal financial aid award would be deferred to Fall 2024 semester |
| 7 | Jewish War Veterans membership ID: WIND6110 |
| 8 | Doctoral_SEAS8510-SPRING-2 2024_Etemadi file |
| 9 | Chapter 31 VA Education Confirmation Letter from April Clark (January 16, 2024) |
| 10 | June 14, 2024 confirmation email from President Granberg re: investigation |